**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

Case No. <u>11-1089; 11-1091</u>

JUAN C. PAGAN COLON; ADA I. RENTA-BONILLA;
CONJUGAL PARTNERSHIP PAGAN-RENTA

Plaintiffs-Appellees/Cross-Appellants,

v.

WALGREENS OF SAN PATRICIO, INC.

Defendant-Appellant/Cross-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF PUERTO RICO
Civil No. 08-02398 (GAG)

---

**REPLY BRIEF OF DEFENDANT-APPELLANT/CROSS-APPELLEE,
WALGREENS OF SAN PATRICIO, INC.**

---

**Gregory T. Usera**
First Circuit Bar No. 82810

**Natalia Villavicencio**
First Circuit Bar No. 109087


**USERA, FIGUEROA & GINER, P.S.C.**
PO Box 9022487
San Juan, Puerto Rico 00902-2487
Telephone: (787) 725-8080
Telefax: (787) 725-8860

# TABLE OF CONTENTS

I. RESPONSE TO CROSS-APPEAL.. . . . . . . . . . . . . . . . . 1

    A.   Statement of the Issues.. . . . . . . . . . . . . 1

    B.   Liquidated Damages . . . . . . . . . . . . . . . . 2

        1.   Duty of the Court. . . . . . . . . . . . . . 2

        2.   The Court's Independent Judgment on Liquidated Damages. . . . . . . . . . . . . . . . . . . . 7

        3.   Abuse of Discretion Standard.. . . . . . . . 15

    C.   Renta's Damages Claim.. . . . . . . . . . . . . . 16

        1.   Renta has no right to recover damages pursuant to Santini. . . . . . . . . . . . . . . . . . . . 16

        2.   There was no independent tortious conduct from Walgreens that would warrant Renta's claim for damages... . . . . . . . . . . . . . . . . . 19

        3.   Plaintiffs' Arguments on Appeal are Unavailing . . . . . . . . . . . . . . . . . . . . . . . . 20

II.   REPLY TO RESPONSE TO WALGREENS' APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    A.   Lack of Causal Connection Between Termination and FMLA Leave.. . . . . . . . . . . . . . . . . . . . 21

    B.   Legitimate Non-Discriminatory Reason for Termination/Lack of Evidence to Infer Retaliation and Pretext . . . . 28

    C.   Back Pay under FMLA.. . . . . . . . . . . . . . . 29

i

TABLE OF AUTHORITIES

A.  **CASES**

1.  **Appellate**

Chandler v. Specialty, 283 F. 3d 818 (6th Cir. 2002). . .  14

Chao   v.   Hotel   Oasis,   493   F.   3d   26,   35   (1st Cir.2007)........................................ . . .  15

Cooper   v.   Fulton   County,   458   F.   3d   1282   (11th   Cir. 2006).............................................12

Dowles v. Conagra, Inc., 980 So. 2d 180 (La. App. 2nd Cir. 2008).. . . . . . . . . . . . . . . . . . . . . .  26

Duty v. Norton, 293 F. 3d 481 (8th Cir. 2002). . . . . .  14

Hoffman v. Professional, 394 F. 3d 414, 419-420 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . 8, 11-13

Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995).. . . . . . . . . . . . . . . . . . . . .  23

Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001).. . .  23

McLaughlin v. Hogar San José, 865 F. 2d 12 (1st Cir. 1989 ...... . . . . . . . . . . . . . . . . . . . . 3, 4

Smith v. Hope School, 560 F. 3d 694 (7th Cir. 2009). . .  25

Vanmeveren v. Whirlpool, No. 02-5071, 2003 WL 21235475 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . .  25

2.  **Federal**

Anderson v. New Orleans, 464 F. Supp. 2d 562 (E.D. La. 2006). . . . . . . . . . . . . . . . . . . . . . .  26

Dillon v. MNCPPC, 382 F. Supp. 2d 777 (D. Md. 2005). . . 9, 10

Frizzle v. Southwest Motor, 154 F. 3d 641, 644 (6th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . 4

ii

Hall v. Meadwestvaco Co., No. Civ.A. 03-30310-KPN, 2005 WL 1205554 at *3 (D. Mass. May 18, 2005) (citing 29 U.S.C. § 260). . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>3</u>, <u>6</u>

Hoyos v. Telecorp . . . . . . . . . . . . . . . . . . . . <u>20</u>

Moss v. Bluecross, 534 F.Supp.2d 1190 (D. Kan. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>25</u>

Rudy v. Lowell, – F. Supp. 2d –, 2011 WL 915334 at *6 (D. Mass. March 14, 2011). . . . . . . . . . . . . . . . . . <u>10</u>

Santiago v. Centennial.. . . . . . . . . . . . . . . . . . <u>26</u>

Satterlee v. Allen Press, Inc., 455 F. Supp. 2d 1236 (D. Kan. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . <u>25</u>

Thorson v. Gemini Incorporated, 96 F. Supp. 2d 882, 891 (N.D. Iowa 1999).. . . . . . . . . . . . . . . . . . . . . . . <u>8</u>

## 3.   Puerto Rico

Baralt v. Nationwide, 183 F. Supp. 2d 486 (D.P.R. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>18</u>

González v. J.C. Penney Puerto Rico, Inc.. . . . . . . . <u>21</u>

Hernández Barreto v. ITT World Directories, 62 F. Supp. 2d 387 (D.P.R. 1999). . . . . . . . . . . . . . . . . . . <u>18</u>, <u>19</u>

Maldonado. . . . . . . . . . . . . . . . . . . . . . . . <u>21</u>

Reyes Guadalupe v. Casas Criollas, 597 F. Supp. 2d 255 (D.P.R. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . <u>18</u>

Rodríguez v. Pueblo, 135 P.R. Dec. 500, 520 (1994).. . . . <u>26</u>

Santini Rivera v. Serv Air, Inc., 137 D.P.R. 1 (1994)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>17</u>, <u>21</u>

## B.   <u>STATUTES</u>

## 1.   Federal

29 U.S.C. § 2617 (a)(1)(A)(iii). . . . . . . . . . . . . . <u>2</u>
29 U.S.C. §§201 et seq.. . . . . . . . . . . . . . . . . . <u>2</u>

Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq.. . . . . <u>2</u>

**2.   Puerto Rico**

Articles 1802 and 1803 of the Civil Code of Puerto Rico. . <u>1</u>, <u>2</u>, <u>16</u>, <u>18</u>, <u>21</u>

**C.   RULES AND REGULATIONS**

**1.   Federal Rules of Appellate Procedure**

Rule 28.1(c)(3). . . . . . . . . . . . . . . . . . . . . <u>1</u>

# I. RESPONSE TO CROSS-APPEAL[1]

## A. Statement of the Issues

Plaintiffs claim the District Court erred by denying Plaintiff Pagán liquidated damages and dismissing co-Plaintiff Ada Renta's damages claim under Article 1802 of the Civil Code of Puerto Rico[2].

Regarding liquidated damages, Plaintiffs claim the District Court abused its authority by declining to award Pagán any liquidated damages because Walgreens "submitted" its good faith defense to the jury, which rejected it. In the alternative, Plaintiffs allege the Court erred by ruling that Walgreens established its "good faith" defense by improperly considering irrelevant facts in the analysis and failing to consider whether Walgreens had reasonable grounds to believe its actions were not in

---

[1] Walgreens disagrees with Plaintiffs-Appellants' Statement of the Issues, Statement of the Case and Statement of the Facts. In compliance with Rule 28.1(c)(3), Defendant-Appellee asks the Court to refer to Walgreens' Appeal Brief for the Statement of the Case and Statement of the Facts.

It is worth mentioning that Plaintiffs' "Statement of the Case" on Cross Appeal (pg. 9) makes specific reference to fact # 132 of Plaintiff's Statement of Uncontested Material Facts and Defendant's response to the same (Pl's Supp. App. Pgs. 13-14; 18-19). These documents should be stricken from the record because they were never presented to the jury and are supported by a document that was not evidence at trial– the DOL's determination regarding Pagán's unemployment benefits. Plaintiffs present this evidence in their Cross Appeal to establish that the DOL granted Pagán unemployment benefits because the DOL determined that Pagán's termination was not caused by incorrect conduct related to his work. This decision from the DOL was specifically prohibited by the Court from entering into evidence because "the determination by the labor department is no indicative...of whether there's liability in this case". See Defendant's Supplemental Appendix at 24.(hereinafter, "Def's Supp. App."). Since these documents and facts were never before the consideration of the jury or the court during trial, they should be disregarded by the Court.

[2] In the Notice of Cross Appeal, Plaintiffs announced they would appeal Plaintiffs' damages claim. However, their Cross Appeal does <u>not</u> include Renta's damages claim under Article 1803 nor Pagán's damages claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico. See Def's Supp. App. at 21-22.

violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA").

Finally, Plaintiffs sustain the District Court erred when it dismissed Renta's damages claim under Article 1802 of the Civil Code of Puerto Rico because Renta has a "right" to recover damages "separate and apart" from Pagán's termination.

### B. Liquidated Damages

### 1. Duty of the Court

According to Plaintiffs, the District Court lacked the ability under FMLA to determine liquidated damages because Walgreens submitted its good faith defense to the jury and the jury rejected it. But this argument contradicts FMLA's clear and unequivocal language, which gives district courts - not juries - the duty to determine the amount of liquidated damages or whether they are awarded at all. See 29 U.S.C. § 2617 (a)(1)(A)(iii)[1]

Plaintiff's argument also contradicts this Honorable Court's precedent interpreting an analogous liquidated damages provision in the Fair Labor Standards Act, 29 U.S.C. §§201 et seq. ("FLSA"). Under the FLSA, if the employer shows to the satisfaction of the **court** that the employer's act or omission giving rise to the lawsuit was in good faith and the employer had reasonable grounds

---

[1]"[I]f an employer who has violated section 2615 of this title proves to the satisfaction of the **court** that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such **court** may, in the discretion of the **court**, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii)".

for believing it was not violating the law, the **court** has the discretion of awarding no liquidated damages or reducing the amount. See 29 U.S.C. §260.

   In McLaughlin v. Hogar San José, 865 F. 2d 12 (1st Cir. 1989), this Honorable Court analyzed the aforementioned provision of the FLSA and concluded that questioning the lower court's refusal to impose liquidated damages was a challenge to the exercise of the **lower court's discretion**, which "is an uphill battle as Congress has in unambiguous language expressly granted **the primary decisional power in this respect to the district court, not to [plaintiff] or the courts of appeal**." (emphasis provided). McLaughlin, 865 F. 2d at 14. Therefore, under FLSA, the **trial court** has the authority to make an ***independent judgment*** regarding liquidated damages. McLaughlin, *supra* at 13-14.

   Following McLaughlin, a district court in this Circuit rejected Plaintiffs' argument in this case, and ruled that it had discretion to determine liquidated damages under FMLA, reasoning that "[t]his delegation of decision-making power to the court was made crystal clear by the First Circuit when it addressed similar provisions in the [FLSA], which language has been tracked in the FMLA." Hall v. Meadwestvaco Co., No. Civ.A. 03-30310-KPN, 2005 WL 1205554 at *3 (D. Mass. May 18, 2005) (citing 29 U.S.C. § 260).

   Walgreens posits, as the district court concluded in Hall, that the analysis under FMLA concerning the award of liquidated

3

damages should not be any different than the analysis made in
McLaughlin under the FLSA. This consistency is required because,
as Plaintiffs themselves sustain in their brief, "the legislative
history of the FMLA reveals that Congress intended the remedial
provisions of the FMLA to mirror those in the FLSA." Frizzle v.
Southwest Motor, 154 F. 3d 641, 644 (6ᵗʰ Cir. 1998). Therefore,
Plaintiffs' contention that the District Court was "removed" or
"unauthorized" to make a determination regarding liquidated damages
is inapposite to the clear and unambiguous language of FMLA and
this Court's interpretation of a nearly identical statute.

The District Court plainly has the statutory duty to make an
**independent judgment** regarding the imposition of liquidated
damages, and that is exactly what the lower court did– it did not
award any liquidated damages to Pagán, leaving him only with the
backpay award. This, after Walgreens demonstrated through the
evidence it presented at trial, that it acted in good faith, and it
had reasonable grounds for believing that Pagán's termination did
not violate FMLA.

Not only is the award of liquidated damages reserved to the
court by virtue of the clear language of the statute and this
Honorable Court's precedent in an analogous case, but Plaintiffs
admitted as much during trial, when asked who should make the
liquidated damages determination[2] and eventually both parties

---

[2]Counsel Martínez: "Usually when the Congress speaks about discretion, it
speaks to judicial discretion. Juries are not considered as having discretion".
See Def's App. 164.

agreed to this. <u>See</u> Defendant's Appendix at 163-165 (hereinafter, "Def's App.").

Before trial, the parties met on numerous occasions to discuss the Jury Instructions and not once did Plaintiffs' counsel object to the District Court's role regarding liquidated damages. Thus, it is not a coincidence that an instruction was not provided to the jury explaining what liquidated damages were, nor a form provided for the jurors to calculate the amount to be awarded, if any, to Pagán. <u>See</u> Def's App. 24-29. The reason for this is simple: this was the Court's job and the parties had agreed to this during trial.

Notwithstanding the above, Plaintiffs now claim they are entitled to liquidated damages under Jury Instruction #19 because the jury found liability and this means it rejected Walgreens' legitimate, non-discriminatory reason for the termination, which in the jury instruction was defined an "an honest, good faith belief for the termination." Walgreens differs. The analysis made by the jury, by virtue of Instruction # 19, goes to the **recognition of liability**, not the imposition of liquidated damages. As succinctly explained by the district court in <u>Hall</u>:

> the question of liability under the FMLA is quite distinct from the question of liquidated damages. Indeed, the very structure of the statutory provision demonstrates that the issues of liability and liquidated damages, while related, are distinct. **Thus, the FMLA grants the court the power to make the requisite determinations of good faith and reasonableness and, if**

5

> **the employer carries its burden of proof on these obligations, the discretion to deny liquidated damages. Accordingly, the mere fact that liability has been established by a jury does not bar the court from exercising its statutory role with respect to liquidated damages.**

Hall, *supra* at *3 (emphasis provided).

Consequently, it is common for courts to deny a plaintiff **liquidated damages** despite a finding of **liability** by the jury. Id. (citations omitted). These are two different concepts.

It is also noteworthy that Jury Instruction #21 specifically stated that the determination that the jurors were making during their deliberation was the amount that Pagán would be awarded for retaliatory discharge under FMLA, which provided only for compensatory damages. See Def's App. 46.

Plaintiffs also claim that since Defendant argued in its closing argument about the good faith of the Company, it was implicitly submitting the issue of liquidated damages to the jury. This argument is unavailing for two reasons: first, Jury Instruction #6 specifically stated that arguments and statements by lawyers are not evidence, and what is said in closing arguments is not evidence (see Def's App. 31); second, any argument regarding good faith from the part of Defendant to the jury went to their determination of Walgreens' liability regarding FMLA, not to the assessment of whether liquidated damages were to be awarded. That was the Court's task.

During post-trial proceedings, the Court was very specific in its ruling that the finding of the jury was for **liability** but that the Court's ruling was an **independent finding for liquidated damages**- and neither party objected to this standard of analysis. See Def's Supp. App. at 42-55; 56-58. The duty of the jury was to make a determination regarding liability under FMLA which provides for compensatory damages. The duty of the Court, in turn, was to make an independent judgment regarding liquidated damages based on the good faith analysis.

## 2. The Court's Independent Judgment on Liquidated Damages[3]

Plaintiffs claim that the Court misapplied the law to the relevant facts in its analysis of the liquidated damages by improperly considering facts that- according to Plaintiffs- are not relevant in this analysis. In addition, Plaintiffs allege that the Court failed to consider if Walgreens had reasonable grounds to believe that its actions were not in violation of FMLA, one of the elements of the good faith defense. Therefore, Plaintiffs claim Walgreens "waived" its good faith defense, and the Court incurred in a manifest error of law and abuse of discretion by granting the liquidated damages. Walgreens strongly disagrees.

---

[3] Plaintiffs cite in page 22 of their Cross Appeal the District Court's Opinion and Order regarding Walgreens' Motion for Summary Judgment (Pl's Supp. Add. at 5) to sustain that, in making its good faith analysis, the Court went "against its own previous finding". As Plaintiffs' counsel is well aware, the Court's determination at the summary judgment stage was made viewing all factors in favor of Plaintiffs to decide whether there were contested material facts that warranted a jury trial- nothing more. The Court did not even address the issue of liquidated damages in its Opinion and Order, which makes Plaintiffs' argument misguided and misleading.

7

"In order to avoid liquidated damages, the employer bears a plain and substantial burden to persuade the court that the failure to obey the statute was both in **good faith** and predicated upon such **reasonable grounds** that it would be unfair to impose upon him more than a compensatory verdict." Thorson v. Gemini Incorporated, 96 F. Supp. 2d 882, 891 (N.D. Iowa 1999). Good faith requires that an employer first take active steps to ascertain the dictates of the law and then move to comply with them. Id. In order to establish objectively reasonable grounds under FMLA, the employer must demonstrate that it took affirmative steps to comply with FMLA's standards. Hoffman v. Professional, 394 F. 3d 414, 419-420 (6th Cir. 2005) (employer's consultation with his attorney implies that the company tried to meet its obligations under FMLA).

To escape the imposition of liquidated damages, Walgreens had to prove both good faith and reasonable grounds to believe it was not violating FMLA. When Walgreens argued against the imposition of liquidated damages, the Rule 50 argument (on both occasions) began with the citation of the statute to be analyzed by the Court, specifically stating that the employer had to prove that it had good faith and reasonable grounds for believing that its acts were not in violation of FMLA. See Def's App. 150-151; Def's Supp. App. at 42-46.

The legal argument that followed was made precisely in an attempt to convince the Court that both of these prongs were met.

The Court specifically stated: "I understand Walgreens acted with reasonable grounds...it has proven that there is reasonable, objective good faith for its actions. Notwithstanding the jury verdict...[t]his is for purpose of liquidated damages only.". See Def's Supp. App. at 59-60. The facts presented to the Court to counter the imposition of liquidated damages were the following:

a. Plaintiff's supervisor, Edwin Figueroa (hereinafter, "Figueroa"), sent a letter to Pagán on May 19, notifying him that he had not reported to work after he left the store on May 10 due to illness[4], and had not contacted him or Human Resources to determine any eligibility for a disability leave. Figueroa asked Pagán to call immediately to apply for this leave. Pagán was also advised that if he failed to communicate in the following 24 hours, it could be considered job abandonment. See Defendant's Addendum at 40. With this letter, Figueroa was awarding Pagán the opportunity to explain the reason for his absences. See Dillon v. MNCPPC, 382 F. Supp. 2d 777 (D. Md. 2005)(employer gave employee repeated opportunities to demonstrate her entitlement to leave). Before sending this letter, Figueroa consulted with the Company's in-house counsel, Frank Bear (hereinafter, "Atty Bear"), who sent Figueroa a template of the letter that he should send Pagán. Figueroa's only

---

[4]Regarding Figueroa's knowledge of Pagán's medical condition on May 10th, Plaintiffs cite a portion of the Answer to Complaint that was not part of the evidence presented to the jury. See Pl's Supp. App. 6. In an attempt to mislead the Court, Plaintiffs cite a portion of the Answer in which Defendant incorrectly alleged that Pagán informed Figueroa on May 10th that he was hospitalized. This fact was never presented to the Jury. As the trial testimony reveals, the information provided by Pagán's wife on May 10th to Figueroa was that Pagán was in the *emergency room* and would call later. See Def's App. 122, 171.

task, as Atty. Bear explained, was to translate the letter into Spanish. See Def's App. 252-254. As a general rule, when an employer relies on the advice of informed counsel, liquidated damages are not awarded under FMLA. Rudy v. Lowell, - F. Supp. 2d -, 2011 WL 915334 at *6 (D. Mass. March 14, 2011).

The May 19 letter was intended to reach Pagán the following day since it was sent from the post office location where it was going to be delivered. See Def's Supp. Add. at 20. Plaintiffs claim this was a bad faith attempt to reach Pagán because Figueroa "should have known" that the Postal Service would deliver the letter after the term expired and because the FMLA form "Request for Leave" was not included in the letter. Regardless of Plaintiffs' theory regarding the Postal Service, the fact remains that Figueroa was the first to mention Pagán's potential entitlement to a leave. See Def's Add. at 40. In cases like this one, where the employer first mentions the possibility that FMLA leave might apply, courts have excused employers from liquidated damages. See e.g., Dillon v. MNCPPC, 382 F. Supp. 2d 777 (D. Md. 2005).

The FMLA form was not included because Figueroa lacked information regarding the reason for Pagán's absences. In a game of guesswork, Figueroa stated in the May 19 letter that Pagán could be eligible for some kind of leave. See Def's Add. 40 and Def's

App. 172-177, 237-240, 252-254.  At that point, it was anybody's guess where Pagán was or what the reason for his absences were.

b.    Even though Pagán did not show up to work after May 10, and Figueroa had no clue about his whereabouts until May 24, Figueroa paid Pagán for two pay periods as "sick leave"[5].  See Def's Add. 29-30, 34; Def's Supp. Add. at 29-32.

c.    After Pagán was informed on May 24 that he no longer worked for Walgreens, he went to Miriam Díaz from Human Resources and represented that he had provided two medical certificates to two different employees throughout the period of absences.  As a result of this meeting, Figueroa, Atty. Bear and the District Manager, Ada Colón, discussed the situation and agreed to award Pagán an opportunity to explain the reason for his absences and justify what the Company up to that point believed was job abandonment.  See Def's App. at 116-117, 139-139, 193-196, 242-244, 256-258.  Cf. Hoffman, _supra_ at 419 (defendant conducted an investigation, which further militates against bad faith and consultation with attorney and meeting with employee affected suggests a **good faith** attempt to comply with FMLA).

d.    Figueroa, Atty. Bear and Ada Colón decided that if Pagán was able to demonstrate that he submitted medical certificates to his co-workers, as alleged, he would be reinstated. Contemporaneous

---

[5]As Figueroa explained, the payment of these days as sick leave was made using his discretion as Manager because Figueroa did not have the certificates that would justify said payment for sick leave. However, he chose to pay them as sick instead of vacation because he did not know if Pagán had any vacations planned. See Def's Supp. App. at 32.

evidence from the DOL details the statements made by Bear, explaining the company's decision to reinstate Pagán[6]. <u>See</u> Def's Add. 31-33; App. 116-119, 258; <u>Cf.</u> <u>Hoffman</u>, *supra* at 419 (consultation with attorney and meeting with employee affected suggests a **good faith** attempt to comply with FMLA).

    e. Figueroa conducted an investigation, which included the interview of Pagán, who was awarded the opportunity to explain his absences and submit documents in support of his position. Three other employees- Mariel Colón, Giovanni Rivera and Wanda Santiago- were interviewed in an attempt to decipher the truth behind the alleged notification of Pagán's absences. Figueroa went further and reviewed a surveillance video that reflected that Pagán had not handed any document to Mariel Colón, as he claimed at the time (before changing his story at trial). <u>See</u> Def's Add. 18-19, 41; Def's App. 200-206, 256-258; 263-264; <u>Cf.</u> <u>Hoffman</u>, *supra* at 419 (defendant went to great lengths to consult with plaintiff and others in an attempt to properly ascertain his FMLA status).

    f. Figueroa consulted his decisions with Atty. Bear. This, standing alone, establishes reasonable grounds for the employment decision in question, inasmuch as it was based on the opinion of an expert on the legal field. <u>See</u> <u>Cooper v. Fulton County</u>, 458 F. 3d

---

[6] Plaintiffs claim that this document also reflects bad faith because it shows that once Atty. Bear "realized the illegality" of its action, he changed the stated reason for termination. As the DOL's contemporaneous records, and the witness testimony reflected during trial, there is no inconsistency in Bear's testimony nor any attempt to change stories. On June 4th, Pagán had <u>not</u> engaged in dishonesty, it was a matter of job abandonment. By June 6th, Pagán had lied. This was the ultimate (and only) reason for termination.

1282 (11th Cir. 2006)(Court found absence of **reasonable grounds** for action because employer never consulted with attorney); <u>Hoffman</u>, *supra* at 419 (consultation with attorney and meeting with employee affected suggests a **good faith** attempt to comply with FMLA).

g.  Defendant discloses its FMLA policy in its Employee Manual. Pagán was given this policy and, as Assistant Manager, was entrusted with administering it; thus, he was knowledgeable of its contents. <u>See</u> Def's Supp. Add. at 19 and Def's Add. 39. The company also provided its employees training and seminars on employment and labor laws. <u>See</u> Def's Supp. Add. at 40.

h.  When the facts in this case occurred, Figueroa had recently been promoted to store Manager and had been working at the Juana Díaz store for one month. <u>See</u> Def's App. at 168. Whereas Figueroa might have been a "rookie", he had the good intention of consulting every move with Atty. Bear. On the other hand, you have Pagán who is no rookie– an 8-year veteran who knew very well all the company policies. Therefore, the Court correctly reasoned that Figueroa's acts were not motivated by bad faith but rather by lack of experience and, by the same token, Pagán could have done a better job regarding the notification of his absences, given his many years of experience as a Manager.

Plaintiffs use the general and collective term of "Walgreens" to refer to "Defendant", but the reality is that the individual employees of the corporation are the ones who have to be identified

and judged by their actions. Plaintiffs make reference to "Walgreens'" knowledge about Pagán's alleged notification of his absences and the consequent bad faith in his termination simply because some of Pagán's co-workers knew about his medical condition. This argument, however, did not controvert the fact that **Figueroa** was never informed[7]. Thus, the Court's task was to evaluate whether Figueroa, who was the ultimate decision maker, operated in bad faith in reaching his decision.

The cases cited by Plaintiffs in support of their contention that Figueroa (i.e. Walgreens) lacked good faith in its actions are unavailing. The cases of <u>Chandler v. Specialty</u>[8] and <u>Duty v. Norton</u>[9] establish that a lack of effort from the employer to find out about an employee's health condition may be indicative of bad faith. In <u>Chandler</u>, unlike in the case at bar, the employer did not demonstrate good faith because the employee's supervisor made no inquiries into the employees' request for leave and made no independent effort to check the information supplied by another co-worker regarding the employee's status. In the case at bar, Figueroa inquired about Pagán's absences and potential eligibility

_____

[7]Figueroa found out for the first time, and after he had sent the letter on May 19, that Pagán had been hospitalized from May 10 to May 17, when the medical certificate from Damas Hospital mysteriously appeared taped to Figueroa's office door. <u>See</u> Def's App. at 179-183.

[8]283 F. 3d 818 (6th Cir. 2002).

[9]293 F. 3d 481 (8th Cir. 2002).

for leave when he sent the May 19 letter[10], and went further to find out about Pagán's alleged notification of absences when he conducted the June investigation. The other case, <u>Duty</u>, is clearly distinguishable because the employer in that case failed to demonstrate good faith by refusing to return the employee to his former position unless he functioned at 100% capacity, and made no effort to determine whether the employee could perform the essential functions of his job. These facts are not comparable to the facts in the case at bar.

In sum, Walgreens sustains that the Court- acting by virtue of its statutory and judicial discretion- correctly denied liquidated damages inasmuch as Defendant was able to prove that it acted in good faith and had reasonable grounds to believe that its actions were not in violation of FMLA.

## 3. **Abuse of Discretion Standard**

FMLA, like FLSA, leaves the decision to depart from the norm of awarding liquidated (or double) damages to the district court. As a result, the standard of review is for abuse of discretion. <u>See Chao v. Hotel Oasis</u>, 493 F. 3d 26, 35 (1st Cir.2007). To find an abuse of discretion is particularly difficult when considering the District Court's findings of good faith and reasonable grounds

---

[10]Plaintiffs claim that by May 16, Pagán had already been terminated because a letter from the Company's external Profit Sharing Program stated so. Figueroa clarified this obvious mistake because by May 19 he was asking Pagán to return to work. <u>See</u> Def's Supp. App. at 34-38. In fact, by June 10, Pagán was still on the payroll system as an active employee, because that is when he received his last payment. <u>See</u> Def's Add. 34.

because these are mixed questions of law and fact, subject to the strict standard of review established by Rule 52(a):

> "That the [Plaintiff] or [the Court of Appeals] might have ruled differently on the ... evidence is ... irrelevant, given the district court's statutory discretion and the 'clearly erroneous' standard. All that we must decide is whether the ... evidence is reasonably sufficient to support the conclusions of the district court as a matter of law." See <u>McLaughlin</u>, *supra* at 14.

The district court's decision was based on reasonably sufficient evidence. Therefore, its decision should be affirmed, even if this Honorable Court would have ruled differently.

**C.   Renta's Damages Claim**

Defendant filed a Motion for Summary Judgment and requested the dismissal of co-plaintiff Ada Renta's damages claim under Articles 1802 and 1803 of the Puerto Rico Civil Code. See Def's Supp. App. at 1-6. The Court issued an Opinion and Order but, inadvertently, omitted to consider Defendant's arguments regarding Renta's damages claim. See Pl's Add. at 1-12.  As a result, Defendant filed a Motion to Reconsider asking the Court to address the issue of Renta's damages claim. See Def's Supp. Add. at 7-12. The Court reconsidered and dismissed Renta's damages claim with prejudice. See Pl's Add. at 13-16.  Plaintiffs now request a *de novo* review of the District Court's decision.

**1.   Renta has no right to recover damages pursuant to <u>Santini</u>**

Renta seeks compensation for the emotional and financial damages she allegedly suffered as a result of Defendant's "unlawful

employment conduct" towards her husband. See Def's App. at. 4-5 (¶¶ 26, 28). Walgreens sought the dismissal of Renta's damages claim based on the Puerto Rico Supreme Court ruling in the case of Santini Rivera v. Serv Air, Inc., 137 D.P.R. 1 (1994): "we hold that in Puerto Rico the relative of an employee who has [sic] been a victim of an Act No. 100 discriminatory treatment at the hands of his employer have [sic] a cause of action under Civil Code Sec. 1802"[11].

The Court in Santini established that the relatives of an employee who has been a *victim of discriminatory treatment under Law 100* could have an independent cause of action for damages under Article 1802 for the harm resulting from said employment discrimination. In the case at bar, Pagán does not claim to be the victim of discrimination under Law 100. The Supreme Court's ruling in Santini was clear and specific in that relatives' compensation in damages was for relatives of an employee who was terminated in violation of Law 100.

To recover under Santini, Plaintiffs would have had to file a claim, not under FMLA, but under Law 100, and they failed to do so. Now, they cannot expect this Honorable Court to read more than what was established in Santini, nor expect the Court to expand local jurisprudence by extending the Santini ruling to relatives of employees who claim compensation under FMLA- a federal statute that

---

[11]Santini, 137 D.P.R. at pg. 14(Official translation).

the local court would not even be inclined to analyze.

The District Court has been emphatic in applying <u>Santini</u> **only** to discrimination cases under Law 100 or statutes that provide emotional damages as remedies. <u>See</u> <u>Baralt v. Nationwide</u>, 183 F. Supp. 2d 486 (D.P.R. 2002); <u>Reyes Guadalupe v. Casas Criollas</u>, 597 F. Supp. 2d 255 (D.P.R. 2008)(Article 1802 claim is derivative of the Law 100 claim and can only stand if a claim for discrimination has been made out under Law 100).

<u>Santini</u>'s holding has been held not to apply in cases where relatives claim compensation because of a violation of a federal statute. In <u>Hernández Barreto v. ITT World Directories</u>, 62 F. Supp. 2d 387 (D.P.R. 1999), a former employee, his wife and their conjugal partnership brought action against a former employer, alleging dismissal because of military status in alleged violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and its state counter part. Plaintiff in <u>Hernández Barreto</u>- like Pagán- did not file a separate discrimination claim under Law 100.  The Court in <u>Hernández Barreto</u> decided that plaintiff's spouse was not entitled to bring a separate cause of action under Article 1802 since there was no specific legal provision to support this allegation.

In <u>Hernández Barreto</u>- as here- plaintiff's spouse based her claim on <u>Santini</u>.  The court in <u>Hernández Barreto</u> ruled as follows:

> We find...that <u>Santini</u>... [is] inapposite to the facts before us. **Those cases arose from conduct protected by**

> **Act 100, which specifically provides for an award of damages to the discriminated employee.** In this case discrimination is asserted under Act 62 and USERRA which, contrary to Act 100, do not provide for a damages award. Therefore, it would be **ludicrous** for plaintiff's spouse to be entitled to greater benefits than Hernández himself would be entitled to.

See <u>Hernández Barreto</u>, *supra* at pg. 394 (Emphasis provided).

As in <u>Hernández Barreto</u>, the present case is brought under a federal statute, which does **not** provide for damages related to emotional or mental distress nor for punitive damages. FMLA, contrary to Law 100 (which is not even asserted in the Complaint), does not provide an award for emotional or mental distress nor for punitive damages. Following the <u>Hernández Barreto</u> holding, it would be ludicrous, as that Court expressed, for Renta to be entitled to greater benefits than Pagán himself would be entitled to.

**2.  There was no independent tortious conduct from Walgreens that would warrant Renta's claim for damages.**

All the facts alleged in the Complaint regarding Renta are exclusively circumscribed to her participation in the events related to Pagán's termination– no "independent" conduct from Walgreens is alleged. Plaintiffs reiterated in their Opposition to Defendant's Motion to Reconsider that Renta "has her own cause of action to seek redress for suffering stemming from Pagán's termination...". <u>See</u> Def's Supp. App. at 13-18. Further, in the Cross Appeal, Plaintiffs state that Renta's trial testimony (which was not even related to her alleged damages) demonstrated that she suffered as a consequence of her husband's termination. Plaintiffs'

arguments are fatal to Renta's damages claim because they demonstrate that there was no separate and independent conduct on behalf of Walgreens, other than the allegedly retaliatory termination of her spouse.

It is noteworthy that when the District Court in its Opinion and Order dismissed Pagán's damages claim with prejudice, it specifically stated that "Pagán has failed to express how that harm was caused **independently** of the wrongful termination." <u>See</u> Def's App. at 16. Plaintiffs did not appeal the Court's denial of Pagán's damages claim. Since Renta's damages are allegedly a direct consequence of Pagán's ("tortious") termination, and the Court already ruled that Pagán's damages do not have an independent cause, it defeats logic that Renta- unlike her husband- would have an <u>independent cause</u> for her damages.

### 3. Plaintiffs' Arguments on Appeal are Unavailing

Plaintiffs note that the District Court observed post-trial that this was a "great case" for an Article 1802 claim. What Plaintiffs fail to state is that the court, in making such expression, was referring to <u>Pagán's</u> damages claim. Renta's claim was not- and could not have plausibly been- the subject of post-trial conversations because her damages claim was not even tried.

Finally, the case law cited by Plaintiffs regarding Renta's damages claim is not persuasive. The Court in <u>Hoyos v. Telecorp</u>[12]

---

[12]488 F. 3d 1, 6-7 (1st Cir. 2007).

20

stated that discrimination in employment is recognized under Article 1802, however, the Court clearly stated that "the viability of these claims rests on [Plaintiff's] Law 80 and Law 100 claims." Id at 7. In the case at bar, the Law 80 claim was voluntarily dismissed with prejudice and the Law 100 claim was never raised.

In <u>González v. J.C. Penney Puerto Rico, Inc.</u>[13], the Court was crystal clear in that relatives' claims under Article 1802 are limited and can be brought only "under certain circumstances". In support of this contention, the Court cited <u>Santini</u> and <u>Maldonado</u>[14], two cases in which a damages concession was made by virtue of a **Law 100 claim.** In any event, the Court in <u>González</u> did not even analyze the relatives' right to damages under Article 1802 because it concluded that the claim was time-barred.

For the reasons stated herein, Defendant posits that this Honorable Court should deny with prejudice Renta's damages claim under Article 1802 of the Civil Code of Puerto Rico.

## II. REPLY TO RESPONSE TO WALGREENS' APPEAL

## A. Lack of Causal Connection Between Termination and FMLA Leave

Plaintiffs claim in their Response to Walgreens' Appeal that Walgreens' challenge to the jury verdict is based on "cherry picked" portions of trial testimony, and that Walgreens did not address "competing testimony" that the jury actually believed. The

---

[13]568 F. 3d 313, 318 (1st Cir. 2009).

[14]138 P.R. Dec. 268, 276 (1995).

problem with this argument is that the testimony that Walgreens is emphasizing is uncontroverted.

Walgreens bases its appeal on the following trial testimony: Plaintiff admitted that he informed his supervisor, Edwin Figueroa, that he physically handed the Damas Hospital medical certificate to Assistant Manager Mariel Colón. Figueroa's testimony corroborated Pagán's recollection, Figueroa testified Pagán told him he had handed a medical certificate to Mariel Colón. It is uncontested that this information, which was provided by Pagán during Figueroa's investigation, eventually proved at **trial** to be FALSE. See Def's Add. 16-19, 41; Def's App. 205-206. And there is no controversy regarding this fact because Pagán himself clarified during trial, that he had "incorrectly" informed Figueroa during the investigation that he had handed the certificate to Mariel Colón. See Id.

Pagán's admission regarding the falsehood of the information provided to Figueroa during the investigation was corroborated by Mariel Colón, who testified she did not receive a medical certificate from Pagán, and Colón informed Figueroa during the June investigation that she had not received Pagán's medical certificate. See Def's Add. 43; Def's App. 227-229.

Pagán's admission regarding the falsehood of the information provided to Figueroa during the investigation was also corroborated by the surveillance video presented by Walgreens, which confirmed

that Pagán did <u>not</u> hand Mariel Colón a medical certificate, as Pagán claimed during the June investigation. See Def's App. 217-219. None of the aforementioned facts are controverted or "competing", as Plaintiffs say, with any evidence on record.

And this evidence, in and of itself, proves that Walgreens' reason for termination was justified-- the Company believed, based on the information provided by Pagán himself, witness Mariel Colón and the surveillance video, that Pagán had lied during the investigation because he did <u>not</u> hand Mariel Colón a medical certificate, as he had claimed in the June investigation.

It is not a matter of credibility when the facts are uncontested: Pagán lied to his supervisor about submitting a medical certificate to Mariel Colón. This is a reasonable and non-retaliatory reason that justified Pagán's termination. To this effect, the jury's role is not to judge whether personnel decisions are correct or wise, as said in the oft-cited mantra: "[t]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments by reviewing the wisdom or the fairness of the business judgments made by employers." <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771, 781 (8th Cir. 1995); <u>Mato v. Baldauf</u>, 267 F.3d 444, 452 (5th Cir. 2001) ("...anti-[retaliation] laws are not vehicles for judicial second-guessing of business decisions, and an employee's disagreement with an employer's business decision is not enough to

prove...retaliation.")

Plaintiffs appear to be alarmed that Walgreens "incredibly attempts" to sustain that Pagán was discharged for dishonest conduct and not for taking his medical leave. But what is truly alarming is that Plaintiffs are unable to contest that the previously detailed set of facts are in any way "competing" against other contradicting facts. It is not a matter of "credibility", it is a matter of facts. The fact that Pagán lied and said that he handed the certificate to an employee, when in fact it has proven by video and testimony that he had not, is not "inconsequential in the grand scheme of things" as Plaintiffs claim.

Pagán's alleged notification of his absences was the key question to be answered during Figueroa's investigation- if Pagán had not abandoned his job and submitted medical excuses, to whom and when had he handed those certificates? Pagán claimed he handed the certificate to Mariel Colón, she denied so and the surveillance video confirmed it. Pagán was consequently terminated for dishonesty. Two years later, during trial, Pagán clarified that he "incorrectly" informed that he had handed the certificate to Mariel Colón. Thus, there is no controversy as to Pagán's dishonesty.

Regardless of what standard the Court ultimately applies for the establishment of a causal connection between the protected activity and the adverse employment action, Walgreens sustains that even the "possibility of a causal connection" is completely

dissipated because it was able to demonstrate at trial- with uncontroverted evidence- that there was an independent reason for the adverse employment action (dishonesty), which was unrelated to the protected activity.

In the case at bar, the uncontested evidence demonstrated that Pagán lied to the Company– a fact that justified his termination, regardless of his entitlement or not to FMLA leave. See Smith v. Hope School, 560 F. 3d 694 (7th Cir. 2009)(termination of employee because of unexcused absences not retaliation under FMLA, where she submitted fraudulent paperwork in support of her leave request). To this effect, an employee may be terminated, even where the termination interferes with his ability to take FMLA leave, so long as he would have been terminated regardless of her leave request. See Satterlee v. Allen Press, Inc., 455 F. Supp. 2d 1236 (D. Kan. 2006); Moss v. Bluecross, 534 F.Supp.2d 1190 (D. Kan. 2008); Vanmeveren v. Whirlpool, No. 02-5071, 2003 WL 21235475 (10th Cir. 2003)(employer articulated two legitimate, non-retaliatory reasons for its termination: plaintiff lied with respect to the appointment time as to one of her absences, and plaintiff incurred in her seventh unexcused partial absence, for which she was subject to immediate termination).

If an employer is justified in terminating an employee for reasons unrelated to taking protected leave, FMLA does not shield the employee from termination while on leave and the employee has

no right of restoration under FMLA. <u>See</u> <u>Anderson v. New Orleans</u>, 464 F. Supp. 2d 562 (E.D. La. 2006).  Moreover, FMLA does not shield an employee from termination for dishonesty simply because the alleged misconduct concerns use of FMLA leave. <u>See</u> <u>Dowles v. Conagra, Inc.</u>, 980 So. 2d 180 (La. App. 2nd Cir. 2008).

Plaintiffs also claim that since Pagán was never handed a termination letter stating the reason for his discharge, the Court should make an automatic inference of pretext for discrimination.

As an initial matter, Puerto Rico law does not compel employers to provide an employee a termination letter nor provide the reason for termination. <u>See</u> <u>Rodríguez v. Pueblo</u>, 135 P.R. Dec. 500, 520 (1994).  Nonetheless, Plaintiffs cite <u>Santiago v. Centennial</u>[15] to support their contention that Walgreens' failure to give Pagán a termination letter converts its legitimate non-discriminatory reason for firing Pagán (dishonesty) into a pretext for FMLA retaliation.

<u>Santiago</u> is inapposite. There, plaintiff was not informed why she was being terminated and a memorandum which identified the reasons for the termination was prepared several weeks after the termination, **when it was clear that plaintiff was initiating legal action against the employer**. Unlike in <u>Santiago</u>, Pagán admitted at trial that he was informed by his supervisor that he was being terminated for dishonesty. <u>See</u> Def's Supp. App. at 26. At that

---

[15]217 F. 3d 46, 56 (1st Cir. 2000).

time, there was no possible way for Figueroa to have known that Pagán would initiate legal action 7 months later. Thus, an inference of pretext for retaliation is not established just because Walgreens did not provide a termination letter. Interestingly, in the case at bar there are <u>contemporaneous</u> records (not after the fact, as in <u>Santiago</u>) which do reflect Walgreens' motivation when it was evaluating the course to follow regarding Plaintiff's employment: the DOL records. <u>See</u> Def's Add. at 31-33.

Despite uncontroverted trial testimony and contemporaneous written records to the contrary, Plaintiffs insist that the Company "changed" its reason for termination. This, despite the fact that the DOL's records specifically demonstrate that when the Company was asked on June 4 at 8:35am why Pagán had been terminated, Atty. Bear informed that Pagán had abandoned his job, but that they would provide him the opportunity to explain the reason for his absences and, if justified, would reinstate Pagán. That was the scenario on June 4.

DOL's contemporaneous records also reflect that two days later, on June 6, Atty. Bear informed the DOL that the investigation conducted by the Company (which occurred on June 4th after Atty. Bear spoke to the DOL) revealed that Pagán had engaged in dishonest conduct and, therefore, the Company would not reinstate Pagán. <u>Id</u>.

**B. Legitimate Non-Discriminatory Reason for Termination/Lack of Evidence to Infer Retaliation and Pretext**

Walgreens has been consistent at all times regarding the reasons it has provided for Pagán's termination. Its explanation is uncontroverted and, contrary to Plaintiffs' assertion, there is contemporaneous evidence that so demonstrates.

As explained above, Figueroa believed that Pagán had abandoned his job and on May 24 so notified Pagán that he no longer worked for the Company when he returned to the store. Figueroa's decision was reconsidered but, after an investigation revealed that Pagán engaged in dishonest conduct, on June 6 Figueroa informed Pagán that he had been terminated for dishonest conduct. It was impossible for Walgreens to inform Pagán on May 24 that the reason for his termination was dishonesty because such had not occurred. Thus, there is no inconsistency in Walgreens' reason for firing Pagán.

Plaintiffs claim in their Response that Pagán's dishonesty was "insubstantial" because it was related to the delivery of his medical condition and "Walgreens" purportedly "knew" about Pagán's condition. First, Defendant clarifies that it has not, and never will admit that Pagán complied with the Company's notification policy regarding absences. The fact that it strategically chose not to address the same on appeal does not concede this fact.

Second, Plaintiffs insist on referring to the decision makers as "Walgreens" as a whole when, as previously explained, this company is composed of individuals -human beings- who make

decisions based on *facts*. In this case, the decision maker-
Figueroa- was never informed by Pagán's wife that he was
hospitalized. See Def's App. at 122-127, 171-175. If other
Walgreens employees knew about Pagán's hospitalization and should
have informed Figueroa, that is another story. But Figueroa, who
did not know about Pagán's whereabouts for more than a week, cannot
be blamed for his co-workers' failure to communicate information.

But even more fundamentally, Figueroa did not act with "bad
faith" or "intent to retaliate" when he made an employment decision
based on all the facts available to him at the time, which Pagán
later contradicted at trial. Finally, no dishonesty is ever
"insubstantial" for Walgreens, as Plaintiffs suggest. The Company
abides by high ethical standards, especially concerning its
managerial employees.

## C. **Back Pay under FMLA**

The documentary evidence presented by Plaintiffs at trial
regarding Pagán's work schedule demonstrate that the amount of
hours worked by Pagán during a work week varied. See Def's Add. 29-
30, 34. According to the pay stubs introduced as trial exhibits,
one week Pagán was paid 4 overtime hours, another week he was paid
6.5 overtime hours. Walgreens sustains that, as in the Thorson
ruling, the District Court should not have included overtime hours
in the back pay calculation because (as these inconsistent pay
stubs clearly reflect), the amount of overtime hours that Pagán

29

would have worked had he remained working at Walgreens is purely speculative, nothing more than guesswork.

Defendant suggested, as an alternative *if* the Court were to include overtime hours, that the year immediately before the termination be used as the basis to calculate the projected overtime hours worked by Pagán, which according to the parties' stipulation was 3.52 hours. See Def's Add. 45. The Court should look at the history of Pagán's overtime in order to make a determination of the future overtime Pagán would have worked. True, Pagán testified that in May of 2008 (the few days he worked that month), he worked 6.5 overtime hours a week, but the fact remained that the parties had already stipulated before trial that Pagán had worked an average of 3.52 overtime hours the year before his termination, which provides a more accurate prediction of what another year of overtime work would have been, vis á vis only one week in May.

Alternatively, if the Court were to (1) reject the Thorson ruling and include overtime pay, and (2) reject the parties' stipulation that Pagán worked 3.52 overtime hours per week the year before his termination as the basis for the back pay calculation, Walgreens sustains that the amount of overtime hours that should be used to calculate overtime payment is 4 overtime hours. This, given that Plaintiffs admitted in page 40 of their Response that Pagán worked an average of 44 hours (4 overtime hours) every week from

2001 until 2008, when he was terminated. If the Court is going to engage in guesswork and include overtime hours, but not use the year before the termination (as stipulated by the parties), then Walgreens' position is that it should use the 7-year-period before the termination and conclude that Pagán worked an average of 4 overtime hours per week, in computing the back pay award. Using this period of time to project the amount of overtime hours Pagán would have worked after his termination would be the most fair analysis inasmuch as it is based "on a long history of substantial weekly working hours", as Plaintiffs themselves claim.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 12th day of September, 2011.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 7,711 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a monospaced typeface using Word Perfect Office X3 in Courier New, 12 point.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to Plaintiffs' counsel,

Alfredo Acevedo Cruz (lcdoacevedo@yahoo.com) and Jorge Martínez (squalus@rocketmail.com), by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**USERA, FIGUEROA & GINER, P.S.C.**
Attorneys for Defendant-
Appellant/Cross-Appellee
PO Box 13399
San Juan, Puerto Rico 00908
Telephone: (787) 725-8080
Telefax: (787) 725-8860


**_s/Gregory T. Usera_**
First Circuit Bar No. 82810


**_s/Natalia Villavicencio_**
First Circuit Bar No. 109087
